UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO GALICIA, | Case No. ED CV 08-970 PJW |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying his application for Disability Insurance benefits ("DIB"). Because the Agency's decision that Plaintiff was not disabled is supported by substantial evidence, it is affirmed.

In September 2005, Plaintiff applied for DIB. (Administrative Record ("AR") 90-94.) The Agency initially denied the application. (AR 45-49.) Plaintiff then requested and was granted a hearing before an Administrative Law Judge ("ALJ"). (AR 475-514.) Following the hearing, the ALJ denied the application. (AR 10-27.) Plaintiff appealed to the Appeals Council, which denied Plaintiff's request for review. (AR 6-9.) He then commenced this action.

1    Plaintiff claims that the ALJ erred in: 1) failing to properly
2 consider treating psychiatrist Thomas Curtis's opinion;
3 2) failing to consider Dr. Curtis's "significant treatment notes"; and
4 3) finding that Plaintiff's mental impairment was not severe at step
5 two of the sequential disability analysis. (Joint Stip. at 3-9, 11-
6 12, 14.) For the following reasons, the Court finds that none of
7 these claims merits remand or reversal.
8    In his first claim of error, Plaintiff contends that the ALJ did
9 not properly consider Dr. Curtis's opinion. (Joint Stip. at 3-9.)
10 The thrust of Plaintiff's argument is that Dr. Curtis administered a
11 number of objective psychological tests and set forth in detail the
12 nature of the tests, the results of the tests, and his interpretation
13 of the results, but that the ALJ did not discuss these findings in her
14 decision. (Joint Stip. at 8.) In Plaintiff's view, this was error.
15 For the following reasons, the Court disagrees.
16    In support of his argument that the ALJ should have discussed the
17 test scores and Dr. Curtis's analysis of them, Plaintiff cites a
18 string of cases that support the general proposition that a treating
19 doctor's opinion is entitled to deference over the opinions of non-
20 treating doctors. (Joint Stip. at 8.) Plaintiff, however, cites no
21 authority for the proposition that an ALJ is required to set forth in
22 detail in her decision the results of objective tests performed by the
23 treating physician and discuss those results. Nor has the Court found
24 any authority for such a proposition.
25    Clearly, an ALJ is required to discuss a treating physician's
26 opinion and may only reject it for specific and legitimate reasons
27 that are supported by substantial evidence. *See, e.g., Orn v. Astrue*,
28 495 F.3d 625, 632 (9th Cir. 2007). But there is no requirement that

the ALJ discuss every aspect of a treating doctor's report.  As this case shows, that would be an impractical and unmanageable task in many cases.  Dr. Curtis did not simply conduct a test on one occasion-- which one might expect an ALJ could set out and discuss in detail--he administered a total of six tests on two occasions, including the Beck Depression Inventory, the Beck Anxiety Inventory, the Beck Scale for Suicidal Ideation, the Neuroticism Scale Questionnaire, the Minnesota Multiphasic Personality Inventory, and the Personality Assessment Inventory.  (AR 259-264, 303-06.)  His reports discussing these tests are single-spaced and run 33 pages long.  (AR 248-312.)  The ALJ's decision, which is 15 pages long, would have had to have been considerably longer if she had discussed the details of the tests performed by Dr. Curtis.  Instead, what the ALJ did was summarize Dr. Curtis's reports and the reports of two other psychiatrists who examined Plaintiff in connection with this case.  (AR 19-22.)  Ultimately, the ALJ concluded that Plaintiff's psychiatric impairments were not severe.  (AR 19-22.)  As discussed below, the Court finds that this conclusion was not in error.  But to the point raised in Plaintiff's first claim, the Court holds that the ALJ is not required to set forth the results of tests performed by Plaintiff's treating physician, or any other physician, in reaching her decision.  Nor does the Court find that the ALJ's failure to do so here was in error.

    In his second claim of error, Plaintiff contends that the ALJ erred in failing to consider Dr. Curtis's treatment notes in reaching her conclusion that Plaintiff was not disabled.  (Joint Stip. at 11-12.)  Plaintiff excerpts numerous notes from Dr. Curtis's records in which Dr. Curtis states, for example, that Plaintiff suffered from

anxiety and depression and was temporarily unable to work.  (AR 11-12.)  The Court concludes that the ALJ did not err here.

It is clear from reading the ALJ's decision that she considered Dr. Curtis's records, including his progress notes.  For example, the ALJ discussed the fact that Plaintiff complained to his doctors that he suffered from "deficits of attention and concentration," but noted that "no such problems have been consistently reported or observed among the various medical sources."  (AR 21.)  The record supports this observation and, more importantly, it demonstrates that the ALJ read and considered Dr. Curtis's progress notes.  (AR 242-47, 288-91.) Plaintiff's claims to the contrary are rejected.

Finally, Plaintiff complains that the ALJ erred in finding at step two that his psychiatric impairment was not severe.  (Joint Stip. at 14.)  For the following reasons, this claim is rejected.

Three psychiatrists and a psychologist offered opinions on Plaintiff's condition: Dr. Marusak, Dr. Ritvo, Dr. Curtis, and Dr. Bamgbose.  Plaintiff went to see Dr. Gregory Marusak first, in May 2004, in connection with his worker's compensation case.  (AR 419-27.) Dr. Marusak found that Plaintiff's reported level of psychological distress was genuine and that his anxiety level was moderate, but reported that Plaintiff's scores on a battery of psychological tests he administered to Plaintiff were within normal limits.  (AR 418-20.) Dr. Marusak diagnosed Plaintiff with "occupational problem with employer," and "rule out personality disorder, narcissistic traits." (AR 421.)  He found that Plaintiff had no limitations preventing him from working.  (AR 425.)

On August 12, 2004, Dr. Curtis was designated Plaintiff's primary treating psychiatrist in connection with his worker's compensation

case, which covered the period February 1992 to March 2004. (AR 298-99.) On August 31, 2004, Dr. Curtis authored a 15-page initial evaluation report, which detailed the results of a mental status examination and psychological testing. (AR 298-312.) Dr. Curtis opined that Plaintiff's psychological test results were extremely abnormal. (AR 303.) He diagnosed depressive disorder, not otherwise specified, and "psychological factors affecting medical condition." (AR 306.) Dr. Curtis determined that Plaintiff was "temporarily totally disabled on a psychiatric basis." (AR 307.) As the ALJ pointed out, however, Dr. Curtis did not find that Plaintiff had any functional limitations. (AR 19, 298-312.)

Dr. Curtis also prepared a report in January 2005, following another examination and evaluation of Plaintiff. (AR 248-75.) In that report, he opined that Plaintiff had slight limitations in all areas of workplace functioning, except for the area of "relating to other people," in which Dr. Curtis opined that Plaintiff had slight-to-moderate limitations. (AR 270-71.) He concluded that Plaintiff was capable of returning to work at that time, but recommended that it be on a part-time basis, initially. (AR 272, 247.)

In February 2005, Dr. Curtis prepared a "Return to Work" form, placing Plaintiff on medical leave for three months. (AR 241.) The one-page form does not indicate the basis for the doctor's conclusion that Plaintiff should be on medical leave. (AR 241.) In April 2005, Dr. Curtis prepared a report in which he documented that he had read and considered the reports from the other medical providers regarding Plaintiff's physical condition and found that none of those reports changed his opinion regarding Plaintiff's condition. (AR 235-38.) About this same time, Dr. Curtis signed off on another medical leave

form, placing Plaintiff on medical leave for three more months. (AR 233.) Again, there is no explanation as to the basis for Dr. Curtis's finding that Plaintiff should be on medical leave. (AR 233.) There are no records from Dr. Curtis after April 2005.

The ALJ also discussed the opinion of state agency psychiatrist Edward Ritvo. Dr. Ritvo examined Plaintiff in October 2005, and diagnosed him with "dysthymic reaction," finding that he was "not impaired in any area of workplace related mental functioning." (AR 428-32.)

The ALJ also considered the testimony of the medical expert, Dr. Olujimi Bamgbose, a psychologist. (AR 21, 478.) Dr. Bamgbose testified that, though Plaintiff had experienced psychiatric ailments in the past, by January 2008, the time of the hearing, those problems had resolved and Plaintiff had no limitations. (AR 21, 506-07.)

Plaintiff argues that the ALJ erred by not finding that his psychological impairment was severe in February 2008, when the ALJ issued her decision. He contends that, based on Dr. Curtis's reports alone, there was sufficient evidence to find that Plaintiff's impairment was severe. (Joint Stip. at 14.) The record simply does not support this contention. Dr. Curtis had determined more than three years earlier, in January 2005, that Plaintiff could return to work. (AR 248-75.) That was the last time that Dr. Curtis provided a report setting forth his opinion. Though he subsequently signed-off on leave forms in February and April 2005 so that Plaintiff could be on medical leave, he provided no explanation on these forms as to the basis for his finding that Plaintiff was temporarily disabled. (AR 233, 241.) Further, even if he had, the last entry from Dr. Curtis was nearly three years before the ALJ's decision. The most liberal of

interpretations of Dr. Curtis's reports would still not support a finding that Plaintiff's impairment continued for three years after Dr. Curtis reported that Plaintiff was capable of returning to work in January 2005.

A fair reading of this record reveals that Plaintiff had difficulty with a supervisor at work. From there, he spiraled into a place where he could no longer work for that supervisor at that job. Though Dr. Curtis supported Plaintiff's request to stop working from August 2004 to June 2005, nothing in this record supports Plaintiff's argument that Dr. Curtis's reports can be read to substantiate Plaintiff's claim that he was severely impaired almost three years later, when the ALJ issued her decision. Mindful that step two is intended to be a *de minimis* screening test, *see Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), the Court concludes that the ALJ did not err in finding that Plaintiff did not meet it.

The Court also notes that the ALJ provided an alternative basis for her finding that Plaintiff was not disabled. She explained that, even had she determined at step two that Plaintiff's psychiatric impairment was severe, she would have concluded at step five that Plaintiff was not disabled. (AR 26 n.5.) This alternative finding was also supported by substantial evidence in the record. In light of it, any error committed by the ALJ at step two was harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir.

7

2006) (defining harmless error in the context of social security cases as one not affecting the ultimate determination of disability). For these reasons, the Agency's decision is affirmed.

IT IS SO ORDERED.

DATED: October 30, 2009

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\GALICIA, A 970\Memo_Opinion.wpd